

# NUMBER 13-23-00421-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**ROBERT E. JENKINS,**                                             **Appellant,**

v.

**MELINDA DE LA CRUZ,**                                           **Appellee.**

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 8
## OF HIDALGO COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Peña and West
Memorandum Opinion by Justice West**

Appellant Robert E. Jenkins, a court appointed receiver, appealed the trial court's grant of "Non-Party Melinda De La Cruz's" motion for sanctions. We abated this matter pending supplemental briefing on appellee Melinda De La Cruz's standing to seek relief in the trial court as a nonparty. Melinda De La Cruz responded that she does not contend

she and the judgment debtor are different people. This being fatally inconsistent with Melinda De La Cruz's representations to the trial court, we vacate and dismiss the appeal.

## I.    BACKGROUND

In 2013, a Walmart credit account holder by the name of "Melinda De" breached the terms of the account by failing to pay a $641.17 balance. The Walmart credit records contain Melinda De's physical address. The account was assigned to Portfolio Recovery Associates, LLC (Portfolio), and in 2016, it initiated the underlying lawsuit to recover the outstanding balance. Portfolio was unable to personally serve Melinda De, and it moved for and was granted substitute service. On May 10, 2016, a process server completed substitute service by affixing the citation and petition to the front entrance of Melinda De's address.

Melinda De never answered the lawsuit. In 2017, Portfolio moved for and received a default judgment awarding $641.17 for actual damages and $376.27 for court costs. In 2020, Portfolio initiated a post-judgment collection proceeding by moving for and being granted appointment of a turnover receiver. In 2023, with the judgment still outstanding, Portfolio moved for and was granted the appointment of a new turnover receiver, Robert E. Jenkins. Thereafter, Jenkins discovered and froze credit union accounts linked to Melinda De.

On June 7, 2023, a motion titled "NON-PARTY MELINDA DE LA CRUZ' MOTION TO REMOVE RECEIVER, RELEASE FUNDS AND MOTION FOR SANCTIONS" was filed by attorney Ronald G. Hole. The motion asserted that Jenkins wrongfully froze financial accounts linked to a "Non-Party Melinda De La Cruz." It characterized Non-Party Melinda De La Cruz and Melinda De as separate and distinct individuals: Melinda De La

2

Cruz being a non-party, and Melinda De being the defendant judgment debtor. Additionally, it claimed "the funds which the Receiver and Security Services Federal Credit Unition froze [are] not those of the Defendant, but instead belong to Non-Party Melinda De La Cruz."

On July 31, 2023, Jenkins filed a "MOTION TO TERMINATE RECEIVERSHIP (NO FUNDS TO DISBURSE) AND RESPONSE TO NON-PARTY'S MOTION FOR SANCTIONS" wherein he stated that the funds were unfrozen and released;[1] requested his discharge as receiver; and averred sanctions were improper because "Non-Party Melinda De La Cruz" had no standing as a nonparty, Jenkins engaged in no wrongful conduct, and Jenkins fully complied with the order appointing him. Jenkins later explained to the trial court that because this receivership involved such a low judgment amount, the most he could earn upon successfully collecting in this case was $300.[2]

At the hearing on Non-Party Melinda De La Cruz's motion for sanctions, Hole made the following representations related to his client's status as a non-party:

> The Receiver was supposed to go after, I guess, property of Melinda De. I don't know whoever that that is . . . . [W]e pointed out and called them, hey, this is the wrong person . . . [T]his is not Melinda De, this is Melinda De La Cruz.
>
> . . . [T]hey made an accident and seized the wrong funds.
>
> . . . What they do, Judge, is they take—take and seize people's funds that can't afford attorneys and can't afford to do that and tell them, no, we're not gonna let it go, even if it's the wrong person. And then when it's pointed out that this is the wrong person—look at your judgment, it's Melinda De. That's not this person, and they wouldn't do anything.

---

[1] Jenkins also attached correspondence he sent to the Credit Union directing it to release account funds associated with "Melinda De."

[2] This explanation occurred at the September 20, 2023 hearing on Jenkins' motion to vacate the sanctions order.

. . . . It's the Dallas attorneys that come and do these things—file these motions and then leave the little people just to hang out there when they need their money to pay their rent, pay their grocery bill, put their kids in school. And they just get stuck and they're like, well, what are you gonna do? We've frozen it. So you either make a payment schedule with us, or it's just gonna stay frozen.

. . . I contacted them. I told them they had the wrong person. I specifically showed them how they had the wrong person. They refused to release the funds.

Based on the representations of counsel, the trial court granted Non-Party Melinda De La Cruz's motion and entered an order awarding "Non-Party Melinda De La Cruz" $7,015.00 in sanctions under Rule 13, Rule 21b, Texas Civil Practices and Remedies Code Chapter 10, and the court's inherent powers.[3] *See* TEX. R. CIV. P. 13, 21(b); TEX. CIV. PRAC. & REM. CODE §§ 10.001–.005. The order included the following finding: "[O]nce Jenkins was advised and discovered that they had wrongfully seized (by design or accident) a third party's financial accounts, [he] did not immediately release such accounts and instead tried to coerce a settlement out of Melinda De La Cruz, a non-party to this action."

Thereafter, Jenkins unsuccessfully moved the trial court to vacate the sanctions order. At that hearing, Hole continued to assert that Melinda De La Cruz was not the same person as Melinda De, with the following representation to the court: "[T]his is the one where they wouldn't release her funds even though[] they had the wrong person."

Jenkins appealed the sanctions order, arguing that, as a court-appointed receiver, he was entitled to derived judicial immunity. Hole filed an appellate brief on behalf of Melinda De La Cruz. In it, Melinda De La Cruz continued to be characterized as a "Non-

---

[3] The order also (1) awarded $12,000.00 related to attorney's fees associated with Jenkins' unsuccessful appeal of the sanctions award; (2) terminated the receivership; and (3) expressly provides it is final and appealable and disposes of all parties, movants, and issues.

Party," by virtue of being the "wrong person." The brief also quoted the following statement Hole made to the trial court at the hearing on Jenkin's motion to vacate: "I testified. Basically, this is the one where they wouldn't release her funds even thought (sic) they had the wrong person."

We abated this appeal pending supplemental briefing from the parties related to the standing of Melinda De La Cruz, a nonparty. In response, Melinda De La Cruz's supplemental brief stated "[a]ppellee never claimed that Melinda De and Melinda De La Cruz were two different individuals." Instead, she acknowledges this case to be a "misnomer situation" where Melinda De La Cruz "was sued in the wrong name." In that regard, Melinda De La Cruz's supplemental brief asserts "two possibilities – [Melinda De La Cruz] was either an actual party, albeit improperly named, to the underlying lawsuit . . . or she was a non-party whose property was being subject to a Receiver's improper conduct."

In tandem with these new statements, Melinda De La Cruz instructs us that the merits of the trial court's sanctions were not appealed and that "the only appellate issue briefed before [us] was whether [Jenkins]" was entitled to immunity.

## II. JURISDICTION

We are obligated to review sua sponte issues affecting our jurisdiction over an appeal. *See Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 71 (Tex. 2021); *Hitchcock Indus. Dev. Corp. v. Cressman Tubular Prods. Corp.*, 698 S.W.3d 29, 32 (Tex. App.—Houston [14th Dist.] 2024, pet. denied); *Allison Publ'ns, LLC v. Doe*, 654 S.W.3d 210, 219 (Tex. App.—Fort Worth 2022, pet. denied). Standing is a component of subject-matter jurisdiction that cannot be waived. *Mosaic Baybrook One, L.P. v. Simien*, 674

5

S.W.3d 234, 250 (Tex. 2023); *see DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008) ("A court has no jurisdiction over a claim made by a plaintiff without standing to assert it."). We do not have jurisdiction to review the merits of a case if the trial court lacked jurisdiction, but we always have jurisdiction to ascertain whether we have jurisdiction over the appeal. TEX. CONST. art. V, § 6(a); TEX. GOV'T CODE § 22.220(a); *Hou. Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158 (Tex. 2007) (explaining "[c]ourts always have jurisdiction to determine their own jurisdiction"); *Aguilar v. Weber*, 72 S.W.3d 729, 731 (Tex. App.—Waco 2002, no pet.). When a party appeals from a ruling, order, or judgment that the trial court lacked jurisdiction to render, the appellate court must declare void and vacate the ruling, order, or judgment and dismiss the appeal. *Doan v. TransCanada Keystone Pipeline*, LP, 542 S.W.3d 794, 806 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *In re M.K.*, 514 S.W.3d 369, 380 (Tex. App.—Fort Worth 2017, no pet*.); Ins. Co. of State of Pa. v. Martinez*, 18 S.W.3d 844, 847 (Tex. App.—El Paso 2000, no pet.); *Bahr v. Kohr*, 928 S.W.2d 98, 100 (Tex. App.—San Antonio 1996, writ denied).

## A.    Appellate Jurisdiction

We first determine whether we have appellate jurisdiction. Melinda De La Cruz moved to dismiss this appeal, averring appellant Jenkins lacks standing to appeal because he is a nonparty. We disagree. Our law is clear that nonparties may appeal from judgments they have an interest in and are bound by. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000); *Baukus v. Engle*, No. 14-22-00705-CV, 2025 WL 924570, at *10 (Tex. App.—Houston [14th Dist.] Mar. 27, 2025, no pet.) (mem. op.); *In re Evans*, 130 S.W.3d 472, 478 (Tex. App.—Houston [14th Dist.] 2004, pet. dism'd) (listing several

6

cases holding a nonparty had standing to appeal). Here, Jenkins appealed from an order assessing sanctions against him at $7,515.00 plus $12,000.00 in appellate attorney fees for an unsuccessful appeal. Thus, he had an interest in and was bound by the trial court's order. *See Stutzman*, 46 S.W.3d at 843; *Baukus*, 2025 WL 924570, at *10; *Evans*, 130 S.W.3d at 478. Therefore, Jenkins, despite his nonparty status in the trial court, had standing to appeal from the trial court's sanctions order.

## B.    Trial Court's Jurisdiction

For the first time on appeal, Melinda De La Cruz asserts she does not (and has never) contended that she and Melinda De are two different individuals. "In fact," Melinda De La Cruz adds, she has the same address as Melinda De. She further posits that the underlying debt collection case appears to be a misnomer where she was simply sued in

the wrong name.[4] We accept Melinda De La Cruz's new positions and statements.[5] Accordingly, as explained below, we find the trial court lacked jurisdiction to award sanctions to "Non-Party Melinda De La Cruz"—a person separate and distinct from

---

[4] To the extend Melinda De La Cruz argues that the misnomer doctrine made her a "Non-Party" related to the underlying default judgment, we disagree. Melinda De La Cruz cited *Mega v. Anglo Iron & Metal Co. of Harlingen* in support of her contention that, when the judgment debtor in the underlying suit is not sued in her complete name, the judgment is unenforceable against her if she was served by substituted service (opposed to personal service). *See* 601 S.W.2d 501, 504 (Tex. App.—Corpus Christi 1980, no writ). However, *Mega* involved a defendant who sought to set aside a default judgment. *Id*. at 503. The trial court's order allowed service of process by mail to disinterested adult "A. R. 'Tony' Martinez." *Id*. However, the return of service indicated that "A. R. Martinez, Jr." was served. *Id*. at 504. We found the judgment should be set aside because the person appointed to be served was not served. *Id*. Today, Texas courts continue to set aside final judgments where substitute service was not executed in *strict compliance* with the trial court's order. *See Spanton v. Bellah*, 612 S.W.3d 314, 317 (Tex. 2020) (holding service to "Heather *Hills* Drive" in place of the authorized "*Heathers* Hill Drive" lacked strict compliance and explained that "[w]hen a trial court orders substituted service pursuant to rule 106, the only authority for the substituted service is the order itself" (citation omitted)). Here, Melinda De La Cruz never sought to set aside the final judgment, and she has not complained that substitute service in the underlying lawsuit lacked strict compliance with the trial court's order on substitute service.

Moreover, we note that the failure to sue a person in their complete name generally does not merit setting aside the judgment (and is not always considered a misnomer). *See Kirk v. Garza*, 875 S.W.2d 24, 25 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (holding that suit brought against "David Garza" was effective against "Anthony David Garza" and explaining that "Anthony Garza," "David Garza," and "Anthony David" were all correct names for "Anthony David Garza" and not misnomers); *see also Brown v. Joe Jordan Trucks, Inc.,* No. 05-23-00676-CV, 2024 WL 3063788, at *9 (Tex. App.—Dallas June 20, 2024, no pet.) (mem. op.) (providing that, for the purpose of service of a process, "[a] commonly known diminutive or abbreviation of a name is sufficient to identify a person in absence of evidence indicating that a different person is intended"); *Salazar v. Tower*, 683 S.W.2d 797, 799 (Tex. App.—Corpus Christi–Edinburg 1984, no writ) (same); *Presley v. Wilson*, 125 S.W.2d 654, 656 (Tex. App.—Dallas 1939, writ dism'd judgm't cor.) (providing "the general rule is that one may be designated in legal proceedings by the name by which he is commonly known, although not his true name"). However, even if this case represented a misnomer (the correct person is sued but misnamed) as opposed to a misidentification (the wrong person is sued), the judgment is not void where "it is clear that no one was misled or placed at a disadvantage by the error." *Reddy P'ship/5900 N. Freeway LP v. Harris Cnty. Appraisal Dist.*, 370 S.W.3d 373, 376 (Tex. 2012) (holding "Reddy Partnership, ETAL" was a misnomer for "Reddy Partnership/5900 North Freeway, L.P."). Here, Melinda De La Cruz now concedes that her address is the same as the address where substitute service in the underlying lawsuit was completed on Melinda De after five failed personal service attempts at the same address. As a result, Melinda De La Cruz failed to present any theory that a lawsuit brought against her in the name *Melinda De* was misleading, placed her at a disadvantage, or otherwise resulted in the default judgment being unenforceable against her. Therefore, we find no merit to her argument that she is rendered a "Non-Party" related to the default judgment by way of a misnomer.

[5] Appellate courts have discretion to accept statements made in briefs as judicial admissions. *In re D.L.W.W.*, 617 S.W.3d 64, 79 n.35 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *Wells Fargo Bank, N.A. v. Smuck*, 407 S.W.3d 830, 842 (Tex. App.—Houston [14th Dist.] 2013, pet. denied), *opinion supplemented on denial of reh'g* (Aug. 15, 2013).

Melinda De—because "Non-Party Melinda De La Cruz" is nonexistent or fictitious, rendering the sanctions advisory.[6]

Texas courts lack subject matter jurisdiction to issue advisory opinions because the constitution forbids it. *Tex. Dep't of Fam. & Protective Servs. v. Grassroots Leadership, Inc.*, 717 S.W.3d 854, 862–63 (Tex. 2025). "The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties." *Bienati v. Cloister Holdings, LLC*, 691 S.W.3d 493, 497 (Tex. 2024) (quotation omitted).[7] Texas courts are empowered only to render judgments that "bind live parties rather than give useful but abstract legal answers." *Id.* at 869. "[T]he Constitution requires a live dispute between genuinely adverse parties." *Id.* at 874. Relief from a court "must have a 'practical effect'[;] . . . a judgment [must] actually affect [a claimant or movant and] not merely vindicate a favored legal position." *Id.* at 875. "[T]hroughout litigation, there must remain a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Id.* (quotation omitted). "[A] 'real and substantial controversy' is one where the dispute is genuine, concrete, and tangible rather than speculative, contingent, or hypothetical." *Id.* A matter is ripe for decision only if "the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex.

---

[6] While there may be a hypothetical scenario where two different people share the same or similar names, along with the same or similar physical address which is listed on a credit application, these are not the facts before the court.

[7] The justiciability doctrines—ripeness, standing, and mootness—are borne from (and ensure courts do not violate) the constitutional proscription on advisory opinions. *Grassroots Leadership*, 717 S.W.3d at 871; *Bienati v. Cloister Holdings, LLC*, 691 S.W.3d 493, 498 (Tex. 2024). These doctrines overlap; if one fails, one or both of the others are likely to fail also. *Grassroots Leadership*, 717 S.W.3d at 867.

2020) (quotation omitted). A claim or injury is not ripe if it is based on "contingent or hypothetical facts, or upon events that have not yet come to pass." *Id.*

Given the foregoing, "[q]uestions of party identification inherently bear upon a court's subject matter jurisdiction." *See Allison Publ'ns*, 654 S.W.3d at 218. The *Allison Publications* court, raising jurisdiction sua sponte, found the trial court lacked jurisdiction to grant relief to a movant (dismissal and sanctions) who appeared as "Jane Doe" because Doe's appearance was a fiction, and the facts were insufficient "to show that [Doe] is the true defendant with a connection to the case." *Id.* at 220. Because of Doe's fictitious identity, the injuries she alleged "bore the same fictional quality and could not yet be shown for standing purposes to be concrete, particularized, and actual." *Id.* Our sister court reasoned:

> Without knowing Doe's identity, the trial court was powerless to answer the most fundamental of questions: Who is Jane Doe? Being unable to answer this question, the trial court could not have reasonably determined that the real person standing behind the Jane Doe curtain was the actual defendant who had a personal stake in the case.

*Id.* Similarly, other courts have provided that jurisdiction is lacking where a claimant or movant is nonexistent. *See In re Coats*, 580 S.W.3d 431, 438 (Tex. App.—Texarkana 2019, no pet.) (explaining that a dead person is nonexistent for jurisdictional purposes, and thus a "motion to dismiss filed by 'the deceased defendant' in this case was essentially no motion at all"); *id.* at n.11 (stating that a jury "verdict against a non-entity"— a deceased defendant—is a nullity); *Loffler v. Univ. of Tex. Sys.*, 610 S.W.2d 188, 189 (Tex. App.—Houston [1st Dist.] 1980, no writ) (providing an action may not be maintained by or against a non-existent or dead party); *see also Patterson v. Planned Parenthood of Hou. & Se. Tex., Inc.*, 971 S.W.2d 439, 444 (Tex. 1998) (providing that where an injury is

10

not ripe, decision on such is advisory); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (holding "[a]n opinion issued in a case brought by a party without standing is advisory because rather than remedying an actual or imminent harm, the judgment addresses only a hypothetical injury").

In her supplemental brief, Melinda De La Cruz does not contend that she is a different person than the judgment debtor, Melinda De. Such a position is fatal to the trial court's sanctions order. Melinda De La Cruz appeared before and moved the trial court as a "Non-Party" and a person separate and distinct from judgment debtor Melinda De. Hole represented to the trial court he did not know who the judgment debtor Melinda De was but that "Non-Party Melinda De La Cruz" was the "wrong person" and "not Melinda De." Moreover, the trial court's sanctions order granted relief to a "Melinda De La Cruz" who is "a nonparty to this action" and whose "third-party financial accounts" were "wrongfully seized." Accepting Melinda De La Cruz's new position on appeal, this "Non-Party Melinda De La Cruz" person does not exist, was fabricated, or is fictitious. Thus, the trial court's order purports to grant relief to a person who is not real (and certainly has not appeared before the court). *See Grassroots Leadership*, 717 S.W.3d at 869; *Bienati*, 691 S.W.3d at 497; *Allison Publ'ns*, 654 S.W.3d at 220. It necessarily follows that there was no live controversy, and any adjudicated injuries or harms never occurred—falling far short of the genuine, concrete, and tangible standard. *See Grassroots Leadership*, 717 S.W.3d at 874–75; *Allison Publ'ns*, 654 S.W.3d at 220. The court's sanctions order has no practical effect. *See Grassroots Leadership*, 717 S.W.3d at 875. Rather it hypothesizes, theorizes, or speculates that contingent upon such "Non-Party Melinda De La Cruz" assuming existence, appearing before the court, and alleging specific harms,

11

then the relief awarded would be merited. *See Lynch*, 595 S.W.3d at 683; *Patterson*, 971 S.W.2d at 443. Such a nonexistent or fictional person has "no connection to the case." *See Allison Publ'ns*, 654 S.W.3d at 220. Advising on the available relief for a hypothetical person with hypothetical injuries is the "essence of an advisory opinion." *See Patterson*, 971 S.W.2d at 444. Courts are powerless to address abstract legal issues that fail to actually affect real parties. *See Grassroots Leadership*, 717 S.W.3d at 875.[8]

Thus, we find the trial court imposed advisory sanctions in violation of the constitution. Accordingly, we must declare void and vacate the trial court's sanctions order and dismiss this appeal. *See Doan*, 542 S.W.3d at 806; *Matter of M.K.*, 514 S.W.3d at 380; *Martinez*, 18 S.W.3d at 847; *Bahr*, 928 S.W.2d at 100.[9]

### III.    DISCIPLINARY REFERRAL

Judges are bound to report ethical misconduct:

> A judge who receives information clearly establishing that a lawyer has committed a violation of the Texas Disciplinary Rules of Professional Conduct should take appropriate action. A judge having knowledge that a lawyer has committed a violation of the Texas Disciplinary Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall inform

---

[8] De La Cruz argues that even if she has no standing, the sanctions were proper because the trial court may impose inherent power sanctions sua sponte, and one of the sources for sanctions in the trial court's order was its inherent powers. We disagree. The Texas Supreme Court has consistently provided that the judiciary's inherent power is an "administrative power" that merely aids courts in the exercise and protection of their judicial power under the constitution. *The State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994); *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398 (Tex. 1979); *see also Webster v. Comm'n for Law. Discipline*, 704 S.W.3d 478, 489 (Tex. 2024) (citing the former cases for similar propositions). The Texas Supreme Court has also clearly provided "[t]he judicial power of the Texas courts does not include the rendition of advisory opinions." *Grassroots Leadership, Inc.*, 717 S.W.3d at 862. Thus, a court's inherent powers do not equip it to impose advisory sanctions.

[9] For clarity, we note that a court generally has jurisdiction to lawfully impose sanctions against parties and practitioners appearing before it even where it lacks jurisdiction to adjudicate the disputes presented by the parties. *See Holcomb v. Waller County*, 546 S.W.3d 833, 839 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *see also In re E.M.*, 665 S.W.3d 832, 836 (Tex. App.—Houston [14th Dist.] 2023, no pet.). Such is not the case here. Our holding today is that the trial court lacked jurisdiction to issue the levied sanction because it was awarded to a fictitious or nonexistent person with fictitious or nonexistent injuries; it was thereby advisory as to a hypothetical situation not actually before the court.

the Office of the General Counsel of the State Bar of Texas or take other appropriate action.

TEX. CODE JUD. CONDUCT, Canon 3(D)(2) ), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. B. Lawyers owe duties of candor and honesty to the courts: "A lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal [or] . . . fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act." TEX. RULES DISCIPLINARY P. R. 3.03(a)(1), (2), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. A-1.[10] Lawyers are barred from "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation." *Id*. at 8.04(a)(3).

Given that attorney Ronald G. Hole's factual representations to the trial court and the facts in his initial appellate brief fatally contradict his current positions and admissions on appeal, Canon 3 requires this Court to refer Ronald G. Hole's conduct in this litigation to the Office of General Counsel of the State Bar of Texas. *See* TEX. CODE JUD. CONDUCT, Canon 3(D)(2).

## IV. CONCLUSION

We declare void and vacate the trial court's sanctions order. Accordingly, we dismiss this appeal. Further, all pending motions are dismissed as moot. The Clerk is ordered to forward a copy of this opinion to the Office of the General Counsel of the State Bar of Texas.

JON WEST
Justice

Delivered and filed on the
5th day of March, 2026.

---

[10] Lawyers are also barred—except when engaging in certain open refusals—from "stat[ing] or allud[ing] to any matter that the lawyer does not reasonably believe is relevant to such proceeding or that will not be supported by admissible evidence, or assert personal knowledge of facts in issue except when testifying as a witness." TEX. RULES DISCIPLINARY P. R. 3.04(c)(2).